SALVADOR VIETA PUIG, Plaintiff and Appellant, *v.* ISIDORO ÁLVAREZ GONZÁLEZ, Defendant and Appellee. SAME, Plaintiff and Appellee, *v.* SAME, Defendant and Appellant.

Nos. 7541 and 7548.   Argued June 8, 1938.—Decided March 10, 1939.

*González Fagundo & González Jr.* for plaintiff-appellant-appellee.
*A. L. López* for defendant-appellee-appellant.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Two appeals have been filed in this case. One by the plaintiff from the judgment dismissing the complaint, and one by the defendant from the order of the court approving a statement of the exceptions filed by the plaintiff to perfect his appeal, from which there were omitted three docu-

ments offered in evidence by the defendant and rejected by the court.

This is an action of revendication. The plaintiff alleged that he is the owner of lot marked No. 1 on Ruiz Belvis St., Caguas, P. R.; that the lot has a front of sixteen *varas* by a depth of thirty two, abutting on the North with said street, on the West with Carmen Flores de Bonilla, on the East, originally with the land of Leonarda Rodríguez, now with Rafael Cordero St., and on the South "with the back of a hut that belongs to Ramón Mejías"; that the property is recorded at folio 180 of volume 62 of Caguas, under No. 837 triplicate, ninth entry.

He further alleged that the defendant is deforcing a portion of said property that he describes as follows: "lot measuring 16 *varas* on its North side, 16 *varas* on the South side, 14 on the East side and 14 on the West side, abutting on the East with Rafael Cordero St., originally land belonging to Leonarda Rodríguez, on the West with the rear of the house of Carmen Flores de Bonilla, on the North with the property described in the preceding paragraph, of which it forms an integral part, and on the South with Tomasa Negrón."

Lastly he alleged that the portion deforced is worth more than five hundred dollars, and that the defendant has refused to return it in spite of all the requests made to him to that effect.

The answer raises several questions. In the first instance the defendant denies that the plaintiff is the owner of lot No. 1 on Ruiz Belvis St., described in the complaint, and asserts that said lot belongs to the municipality of Caguas as an integral part of a property of 81 *cuerdas* described, which is recorded in its name since 1890, at folio 92 of volume 11 of Caguas, property No. 562, first entry.

He further alleges that although the property appears recorded in the name of the plaintiff in the ninth entry, the truth is that the first entry includes a house and lot in favor

of Agustín Ramírez, in 1900, by virtue of a possession title proceeding in which Ramírez did not present a certificate of payment of the taxes on the house nor on the lot, nor did he notify the municipality of having filed the proceeding, nor has Ramírez or his successors, including the defendant, ever been in possession of or claimed ownership to said lot in the tax returns, stating, on the contrary, that the lot belongs to the municipality; he further alleged that neither Ramírez nor his successors have possessed, since 1902, the rear part of the lot allegedly deforced by the defendant, it having been possessed by Ruperto Aponte Díaz, as usufructuary of its owner the municipality, from 1902 to 1919, and from 1919 to the present by the defendant.

All those allegations are made in answer to the first paragraph of the complaint. Answering the second one, the defendant denies that he is in adverse possession of the portion described in the complaint, alleging, on the contrary, that the following property is located within the boundaries above mentioned: "Urban Property. Wooden house with a zinc roof, at No. 1 Rafael Cordero St., Caguas, having a nine meter front and 8 meters 15 centimeters in depth, located on a lot belonging to the municipal government of said city, which lot has 10 meters, 70 centimeters in depth, abutting on the North with waste land owned by the municipality of Caguas, on the South with the house of Tomasa Lebrón; on the East with Rafael Cordero St. and on the West with the house of Paula Maldonado. This house was built by Aponte in 1902 on a lot belonging to the municipality that granted the use and usufruct of the lot to Aponte", and recorded in his favor according to a public deed of construction dated June 3, 1916, and of the certificate of that same date issued by the Municipal Secretary of Caguas, property No. 2295, first entry, dated June 15, 1916, and title thereto passed from Aponte and his wife to the defendant by a public deed of July 22, 1919, recorded since June 15, 1922, in the Registry

of Property, folio 28 back, of volume 49 of Caguas, having been in possession as owner from the date of acquisition.

In the other paragraph of the answer which is number three, it is denied that the value of the property claimed is in excess of $500, and it is asserted, on the contrary, that it is worth not more than $140.

By the next paragraph it is maintained that the action has prescribed in accordance with section 1863 of the Civil Code, 1930 ed., because more than thirty years have elapsed from the date in which the plaintiff and his predecessors in interest lost material possession of the portion now claimed.

By the fifth and sixth paragraphs it is alleged that title to the house and to the use of the land have been acquired by prescription, having been in uninterrupted, quiet and public possession thereof, as owners, both he and his predecessors in interest, for over thirty years previous to the filing of the complaint (sec. 1859 of the Civil Code, (1930 ed.) and secs. 35 and 394 of the Mortgage Law), and by ordinary prescription because he acquired proper title and over ten years have elapsed between persons present since the date of its acquisition. Sec. 1857 of the Civil Code, 1930 ed., and sec. 35 of the Mortgage Law.

The case went to trial. Both parties offered evidence and on September 1, 1936, the court rendered judgment, as we have stated, against the plaintiff. The court said in its opinion:

"After having complied with the preliminary proceedings and having had a trial in which the parties offered documentary and oral evidence; after the court made an ocular inspection of the premises in controversy, and having been offered in evidence by the interested parties written reports sustaining their respective contentions, the court has carefully analyzed the evidence introduced, in the light of the allegations, having arrived after such examination to the conclusion that neither the plaintiff nor his predecessors in interest have possessed nor had title to the lot object of this action, which belongs, in the opinion of the court, to a person dif-

ferent from the parties to this suit, and on which a house is located that belongs to the defendant."

The appellant assigns two errors in his brief and argues them together, to wit: the court committed an error of law because it violated the provisions of sections 356 and 1849 of the Civil Code and section 34 of the Mortgage Law, and also erred in weighing the evidence.

The sections of the Civil Code allegedly violated correspond to sections 283 and 1848 of its 1930 edition. They provide:

"Section 283.—The ownership of a thing is vested in him who has the immediate dominion thereof, and not in any other person, notwithstanding the fact that he uses or enjoys in some manner the thing belonging to another."

"Section 1848.—Any express or implied acknowledgment which the possessor may make with regard to the right of the owner also interrupts possession."

And article 34 of the Mortgage Law provides:

"Art. 34. Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from said registry.

"Only by vitue of a recorded instrument may another later instrument, also recorded, be invalidated to the prejudice of a third person, with the exceptions mentioned in article 389.

"The provisions of this article shall at no time apply to an instrument recorded in accordance with the provisions of article 390, unless prescription has validated and assured the interest to which said instrument refers."

After a careful study of this case, which is truly confusing, we think that it can not be said that the court erred in weighing the evidence in the manner it did, nor that it violated the sections stated by the appellant.

Let us examine the evidence of either party. That of the plaintiff consisted of his own testimony, that of Juan Ramón Velázquez, and several documents.

The plaintiff stated that he was the owner of the property described in the complaint and that was not in possession of it; that the portion possessed by the defendant is worth $600; that there was a small hut in that portion of the land where Nino Fuertes or Ruperto Aponte lived; that he met Aponte "a few years ago, four or five years ago, while in possession of the land and in different occasions offered to sell him the hut, the hut only"; that the declarant is a business man and "can say nothing for certain concerning that matter", so complicated that he can say nothing for certain; that he did not worry about the lot; that he did not see the defendant there; that he pays the taxes; that the lady from whom he purchased "paid for everything"; that the house was burnt "during the life of that lady and he continued with the lot"; that he did not pay taxes; that he did not pay for the lot because it is waste land; that he "purchased the remains of the burnt house and it appears that inasmuch as the house was so cheap, the lady was granted the privilege not to pay taxes, and that he has done the same thing"; "that originally the lot was worth $1,200; that 'La Democracia' offered him that amount believing the lot to have a 16 *varas* front by 14 *varas* in depth, but it appeared to be only 8 by 10"; that counsel Rafael Arce was his attorney-in-fact, who took care of everything, that he (Arce) told him he could buy the property and he purchased it "and that he does not know how it stands."

The other witness said that he had lived in Caguas since 1905 and met Ruperto Aponte in 1918 or 1919; that at that time Aponte had a house "on Rafael Cordero St., made of wood and zinc, and at some time offered to sell it to him but he did not buy it; that el Galleguito took possession of the house after Ruperto left it, but he does not know who came to it after the former; "that he has lived on that street

all his life and knows all about it since that time, that is, from 1905 or 1906; that there was a house on that lot which Nino Aponte offered to sell him''; that the house ''was like the one don Isidoro (the defendant) found there, but was a very small house''; ''that he knows Juanito and met him while living at Nino Aponte's house, when he was but a child . . . and has seen him living there for the last twenty or twenty-five years, and that the house belongs to Nino Aponte.''

Such is, in short, the oral evidence offered by plaintiff. The documentary evidence is as follows:

A certificate issued by the Registrar of Property of Caguas. It says that on August 13, 1900, property No. 837 ''was recorded for the first time, thus: *Urban property.* A house made of wood with a tile roof, situated on Comercio St. of this city, constructed on a lot having a 16 *varas* front by 32 meters in depth . . .'' A description follows that coincides with that in the complaint. The record was made, without prejudice to third parties with a better interest in the property, in favor of Agustín Ramírez by virtue of a possession title proceeding had before the Municipal Court of Caguas, wherein Ramírez proved he had purchased the property from Sandalio de Jesús four years previous, without having acquired by said purchase a recordable title;

Copy of the public deed executed on November 17, 1918, by Elvira, Providencia and Isidoro Vieta Carrillo in favor of Salvador Vieta Puig, by virtue of which the former sell to the latter a ''one story house . . . situated on Ruiz Belvis St. . . . originally called Comercio St. . . . with a lot where the house is located . . . 32 *varas* in front by 32 *varas* in depth . . .'' The deed was recorded only as to 16 *varas* in front by 32 *varas* in depth, second entry, property No. 837;

Copy of a public deed executed by Vieta Puig and Manuela Rodríguez on March 4, 1919 by virtue of which the former sells to the latter the ''one story house . . . on Ruiz Belvis St. . . . with the lot on which the house is located,

which house, described *supra,* he acquired by purchase from Elvira . . .;''

A certificate from the clerk of the Municipal Court of Caguas of the final order of said court issued on November 19, 1923, decreeing the conversion of the record of possession into record of ownership as to the ''property consisting of a house and lot . . . on Ruiz Belvis St.'';

Copy of the deed executed by Manuela Rodríguez on November 20, 1923, wherein the above stated final order is transcribed and the following is said: ''that after having prosecuted the proceeding stated, the appearing party has been informed of the act approved by our Legislative Assembly on July 7, 1923, to amend again article 441 of the Regulations for the execution of the Mortgage Law of Puerto Rico, which amendment makes a judicial proceeding unnecessary by owners, as the instant grantor, who have had their possession recorded for more than twenty years and where no note exists in the Registry, indicating that prescription has been interrupted during said term. And the appearing party, taking advantage of the most favorable effects of the new Act amending said article 441, executes the instand deed, requesting the Registrar of Property of this district to convert the record of possession of the property described *supra* into a record of ownership, by means of a marginal note.'' The copy contains the note of the Registrar which reads: ''Conversion effected . . . by a marginal note on the 8th entry, property No. 837. . . .''

Copy of the public deed executed on July 3, 1926, by Manuela Rodríguez and Salvador Vieta by virtue of which the former sells to the latter the ''property consisting of a house and lot . . . on Ruiz Belvis St.'' whose record of possession has been converted into a record of ownership. This document was recorded as entry No. 9, of property 837, in favor of Vieta, the plaintiff.

Before considering this evidence it seems appropriate to summarize that of the defendant.

His evidence was also oral and documentary. The very defendant took the stand as a witness. He said, in short, that Ruperto Aponte, who was engaged in planting tobacco, in or about 1916 mortgaged three small houses to secure a loan made by his brother Ricardo Alvarez. Among the three houses mortgaged was the one located on 28 Ruiz Belvis St., and the declarant appeared in such transaction as his brother's attorney-in-fact. "He found a well-built house with three doors leading to the street, two bathrooms, and a tiled roof;" the Vieta family occupied the abutting house which fronted on Ruiz Belvis St.; both were situated in abutting, but separate lots; that he has lived in Caguas during 35 years and that "it has always been said that the lots in Caguas belong to the municipality;" this last statement was stricken upon motion by plaintiff.

He went on testifying that Aponte was unable to pay and had to sell the house whereupon the witness bought it in the year 1917 or 1918, and has been in possession of it ever since; that he has always acknowledged the municipality's title to the land; that he paid it the usufruct contribution; that no one claimed the lot as owner until the beginning of 1934 or December 1933, when, as a result of the damages suffered by the house from the effects of the hurricane, he had to repair it; and while he was so doing Manuelito Jiménez asked the Department of Health to stop the work because that lot belonged to another person; that the Department of Health refused to so do, and that was the first time in thirty years that he had any notice that the lot belonged to Puig.

The documents presented in evidence were:

Copy of the public deed executed in Caguas on June 3, 1916, by Ruperto Aponte and his wife and Isidoro Alvarez, by virtue of which the former mortgaged two houses in favor of the latter, one of which houses was described thus: "*Urban Property*. A one story house of native wood and zinc, located on No. 28 Ruiz Belvis St. of this city, having a nine meter front by 8 meters 15 centimeters in depth, built on a lot belong-

ing to the municipality of Caguas and given in usufruct to the appearing husband by virtue of a concession of the municipality granted some 14 years ago; that the lot abuts on the North with Isidoro Vieta . . ." Thereafter, in the second clause, the following appears: "that the lots on which the two houses described are located were segregated, so as to grant the usufruct to the husband executing the deed, from a property belonging to the municipality and which is described thus: *Urban Property:* land dedicated to the improvement of this municipality, consisting of 83 *cuerdas* . . . recorded in the Registry of Property at folio 92, volume 11 of Caguas, property 562, first entry";

Copy of the public deed executed on June 22, 1919, by Ruperto Aponte and his wife and Isidoro Alvarez by virtue of which the former sold to the latter the wooden house located on No. 28 Rafael Cordero St. of Caguas, built on a lot belonging to the municipality;

Qualification by the Registrar of Property of Caguas comprising (*a*) literal copy of the first record of property 837 by virtue of the possession title proceeding in favor of Ramírez, (*b*) copy of the following documents in file in the Archive of Public Documents of the Registry: certificate issued by the Secretary of the Municipal Government of Caguas, dated May 21, 1900, stating that Ramírez is in possession, as owner, of a wooden house situated on Comercio St., and that said lot does not appear in the tax allotment because it is not included by Rule 3 of the Regulations to levy urban taxes, and a writing addressed by Ramírez to the municipal judge after the commencement of the possession title proceedings and steps taken for its prosecution until the final order was rendered; (*c*) literal copy of the first record of possession of the house on lot 28, Rafael Cordero St., of the municipality of Caguas, that abuts on the North with Vieta, made in favor of Ruperto Aponte and his wife Bibiana Ramos on June 15, 1916, stating that the lot is part of property 562 recorded in favor of the municipality; and (*d*) copy of the record of

the sale of the house on 28 Rafael Cordero St., Caguas, in favor of the defendant, recorded on June 15, 1922;

Certificate of the Treasurer of Puerto Rico of a return for the year 1917–18, for property taxing purposes, filed under oath by Josefa Grillo de Vieta with reference to the property whose location is thus given: Abutting on the North with Ruiz Belvis St., corner of Rafael Cordero St., on the South with Ruperto Aponte, on the East with Rafael Cordero, it being stated that the lot belongs to the municipality and that the value of the house is $500;

Certificate of the Treasurer of Puerto Rico of the return under oath filed by Isidoro Alvarez for the purpose of taxing the property including house No. 28, on Rafael Cordero St., Caguas, the lot abutting on the North with Isidoro Vieta, wherein the value of the house is fixed at $300, and it is stated that the lot belongs to the municipality. Fiscal year 1920–21;

Certificate of the Treasurer of Puerto Rico with reference to the report rendered by Ruperto Aponte of house No. 28, Rafael Cordero St., Caguas, built on a lot that belongs to the municipality. Fiscal year 1909–1910;

Certificate of the secretary of the municipal government of Caguas authorizing A. Ramírez, in 1896, to construct a house on Ubarri St., and of an agreement dated 1900 changing the names of the streets of the city.

Last, an ocular inspection was practiced and the following was set forth in the record made:

"There lies on the corner of Rafael Cordero and Ruiz Belvis Streets an empty lot where one may still see what remains of the foundations of buildings that once stood there. The foundations are of concrete and part of the floor is covered with well worn cement. It apears that the cement has been there for a long time. The lot measures on its front to Riuz Belvis St. exactly 16 *varas* and has a depth, that is, along its front on Rafael Cordero St., of 35 ft. The back of that lot, taking the front to be along Ruiz Belvis St., abuts with the house of the defendant, which house allegedly occupies land of the plaintiff. Along its front on Ruiz Belvis St., it measures 37

ft. 5 in., taking as basis a brickwork that lies in front of Ruiz Belvis St. From that brickwork, counting 32 in that direction, one finds not only the lot owned by plaintiff, but all of the lot allegedly owned by the defendant and part of the one that abuts on the South side with the property of the defendant. Examined both from within and without, the house owned by the defendant appears to have been constructed many years ago. The boards are wide and apprently, judging from their consistency, most of the woodwork is of native wood. There are also antique corner ornaments constructed of the same wood, a characteristic which reveals the portion built of concrete such as the foundation, the zocles, etc."

A statement of the evidence in its entirety suffices to conclude, as we have said already, that the trial court did not err in weighing it, nor violated the provisions of law assigned in rendering judgment.

From the very testimony of the plaintiff and of Velázquez, his witness, which is obscure, weak and conflicting, it appears that the plaintiff never had the "immediate dominion" of the thing, of which sec. 283 of the Civil Code, 1930 ed., speaks.

On the other hand, the evidence offered by the defendant, relative to the testimony of plaintiff's witness Velázquez, shows that the defendant and his ancestors have possessed as owners, since 1902, the house located on the lot claimed, and also the lot, with the permission of its owner, the municipal government of Caguas.

It is true that the lot is included within the boundaries of the one on which the house of Ramírez was allegedly built, according to the possession title proceeding decided in 1900, and recorded in the registry, but if the proceeding in question is carefully studied together with the record made thereof in the registry, all in the light of the statements made by the predecessors in title of plaintiff and through the returns filed for the payment of the taxes wherein it is expressly set forth that the lot belongs to the municipality, assessing the house only and giving the Southern boundary as abutting with Aponte, it will be seen that the property of Ramírez

and of his successors, the last of whom is the plaintiff herein, was limited to the house, inasmuch as the lot belonged to the municipality.

It is striking that the "house" is the predominant factor in the first entry, in the deed of sale to Vieta, dated 1918, and in the sale to Mrs. Rodríguez in 1919. It is at the time of the conversion when one hears of a "property consisting of a house and lot," and that happened in 1923, when the possession had been recorded in the very Registry since 1916, of the house that belongs today to the plaintiff, in favor of his ancestor Ruperto Aponte as owner thereof. The house was constructed on that portion of the property that allegedly had been expressly stated, had been given in usufruct by its owner the municipality, and a description followed of the larger property from which this one came from.

We have not found any support in the evidence for the allegation in the answer that the record of property 562, from which the lot on which plaintiff's house stands was segregated, was made in favor of the municipality in 1900, as to the exact date, but it does appear from the evidence without any shadow of a doubt that it was made before because the property of the municipality is number 562 and that of Ramírez 837. Therefore, even though the possession title proceeding of 1900 were given a scope which it actually lacks, or at least it is doubtful that it does have it, one must conclude that when the property was recorded, an entry had already been made in the registry on which the usufruct granted to the defendant rested as recorded in favor of his predecessor in 1916 and thereafter in his favor in 1922.

The judgment appealed from, hence, complies with the Mortgage Law. Neither the one pointed out by plaintiff-appellant nor any other of its sections was violated.

Examining the title alleged by plaintiff over that part of the land in possession of the defendant, it is doubtful even according to the very Registry which is what favors him most. And it would be useless because for a period longer than 30

years prior to the date of the filing of the complaint—December 2, 1933—he failed to exercise it. He even admitted —returns—that he did not own it and acknowledged adverse possession, in another person—returns, testimony of his witness Velázquez, defendant's evidence.

On the contrary, the right of the defendant—title to the house and the usufruct of the lot—has been so clearly and firmly established according to the Registry, that one can not fail to acknowledge it.

The plaintiff-appellant insists that the defendant can not allege prescription in his favor as usufructuary of the Municipality of Caguas.

This is the position of the defendant. He is sued for deforcing a portion of land on which he has a house; the plaintiff alleges that he has a title recorded in the registry which apparently covers that lot. He, in his turn, does not consider himself a diseisor but a person in legal possession. He purchased and recorded his right in the registry. His vendor erected the house on a lot belonging to the municipality, granted to him by its legitimate owner, over thirty years ago. Because of the grant, and should that be insufficient, because of the uninterrupted possession as owner for more than thirty years, publicly and pacifically, his real usufruct right became consolidated. Is it possible that he should be unable to raise it as a defense? It is not possession by mere tolerance, it is possession adverse to plaintiff. It is not a personal but a real right.

Usufruct is constituted by law, by the wish of the parties expressed in instruments *inter vivos,* or by last will, and by prescription, the Civil Code, 1930 ed., sec. 397, expressly provides. And commenting the corresponding section of the Spanish Civil Code—sec. 468—Manresa says:

"*Mixed Usufructs (Prescription).*—Section 468, in this respect, merely acknowledges a fact. Title and real interests are acquired by prescription, and inasmuch as a usufruct is a real right, undoubtedly it is included in section 1940. To that end one must be

in possession or exercise the usufruct right for a given length of time, without means of acquiring, be it with or without title, in good or bad faith. The period of time shall be of three or six years with personalty, and ten or thirty years with realty, as we shall see later.

"Considering himself to be the owner of certain chattels of an absent person, D provided that after his death the usufruct thereof should pass to his widow and the title to his brother. The usufructuary remains in possession of that property, in good faith, for three or ten years, and just because D was not the legitimate owner, the usufruct and the title are constituted by prescription." 4 Manresa, Comentaries to the Civil Code, 5th ed., page 331.

We refer presently to defendant's appeal. After having examined the documents offered by him in evidence and that the court refused to admit by virtue of plaintiff's objection, we conclude that his case would have been even stronger had those documents been admitted.

But inasmuch as the judgment finally rendered in his favor is sustained by the evidence admitted, and since the appeal filed by plaintiff will be dismissed, there is nothing else to be done, and the appeal taken will be academic, for which reason it should be dismissed.

Therefore, the judgment appealed from must be affirmed.

Messrs. Justices Travieso and De Jesús took no part in the decision of this case.